IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSE MELENDEZ, #100239         *
        Petitioner,
  v.                             *

JENNIFER MASSELIENO,           *   CIVIL ACTION NO. ELH-13-1864
DIRECTOR OF THE BALTIMORE
  MARYLAND VOLUNTEER'S OF      *
  AMERICA HALFWAY HOUSE, *et al*.
        Respondents.          *
                              *****

MEMORANDUM

Jose Melendez filed a fee-paid petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, while housed at the Kent County Detention Center in Maryland. ECF No. 1. He has sued Jennifer Masselieno, the Director of the Maryland Volunteers of America; the Federal Bureau of Prisons; and the Disciplinary Hearing Officer for the Bureau of Prisons at Annapolis Junction. In particular, Melendez alleges that on June 13, 2013, he was improperly charged with a positive urinalysis for marijuana while at Volunteers of America ("VOA"), a halfway house in Baltimore where he was serving the remainder of his federal sentence. Melendez sought release from confinement, alleging that he does not do drugs, there was a chain-of-custody problem with the handling of his urine sample, and he remained in custody without being afforded a hearing before a disciplinary hearing officer ("DHO"). *Id.*

On August 21, 2013, respondents filed a motion to dismiss or, in the alternative, for summary judgment ("Motion"), supported by numerous exhibits. ECF No. 7, 7-2 to 7-16. They advance several grounds to support their Motion, which is unopposed.[1] ECF No. 7. No hearing is necessary

---

[1] The record shows that Melendez was served with notice of respondents' filing pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). ECF No. 8. No opposition was filed.

to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, summary judgment shall be granted and the petition shall be dismissed.

## I. Standard of Review

As noted, defendants have styled their Motion in the alternative, as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or for summary judgment under Fed. R. Civ. P. 56. The Motion is supported by several exhibits.

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under F. R. Civ. P. 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd,* 684 F.3d 462 (4th Cir. 2012). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). This discretion "should be exercised with great caution and attention to the parties' procedural rights." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 149 (3d ed. 2004, 2011 Supp.). In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[2] In any event, on or about August 22, 2013, in accordance with *Roseboro v.*

---

[2] A court may not convert a motion to dismiss to one for summary judgment *sua sponte*,

*Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), petitioner was informed of his right to file a response to the Motion, and the opportunity to submit affidavits, declarations, and other documentary evidence. *See* ECF 18. As indicated, Melendez did not oppose the Motion.

Summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Petitioner has not filed an affidavit under Rule 56(d). Nor has he indicated that he is need of discovery with regard to the Motion. Moreover, I am satisfied that it is appropriate to address the Motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477

---

unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997 ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The Fourth Circuit has explained that the party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but rather must" set forth specific facts showing that there is a genuine issue for trial. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). And, the court must "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility. *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002).

Because Melendez is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court must also abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial. *Bouchat*, 346 F.3d at 526; *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993); *see also Celotex Corp.,* 477 U.S. at 323-24. To defeat a properly supported motion for summary judgment, petitioner "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers,*

*Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

## II. Factual Summary

Respondents aver that on April 22, 2011, Melendez was sentenced in this court to a thirty (30) month term of imprisonment in the Bureau of Prisons ("BOP"),[3] to be followed by three years of supervised release, arising out of his conviction for document fraud, in violation of 18 U.S.C. § 1028. ECF No. 7, Ex. 1, Declaration of Thomas McGee & Attachment A.[4] Melendez began to serve his sentence on April 8, 2011. *Id*. at Attachment B. On March 13, 2013, Melendez was transferred to the Volunteers of America Residential Re-Entry Center ("RRC") in Baltimore. As part of this designation, he signed an acknowledgement in which he agreed that he would not use illegal drugs. *Id*. at Attachment K. On April 8, 2013, Melendez was approved for placement on home confinement. *Id*. at Attachment B.

Melendez reported to the VOA for routine urinalysis screening on June 3, 2013. *Id*., Ex. 1 at Attachment C. When the sample was collected, Melendez signed the chain-of-custody form,[5] and certified that the specimen was his, was provided to the collector, and was sealed in his presence. *Id*., Ex. 1 at Attachment J. The sample was sent to a toxicology service for analysis. On June 12, 2013, the VOA received confirmation that Melendez's sample tested positive for marijuana. *Id*., Ex. 1 at Attachment C. Petitioner was subsequently charged with a Code 112 violation for the "use of any narcotic, marijuana, drugs, alcohol, intoxicants, or related paraphernalia not prescribed for the individual by medical staff." *Id*.

---

[3] Sentence was imposed by Judge Legg. *See* ECF 7-3.

[4] McGee is employed by the BOP as the Discipline Hearing Officer for the Mid-Atlantic Regional Office.

[5] The chain-of-custody form indicates that the inmate has verified that the specimen numbers on the form, on the peel-off barcode, and the numbered label to be affixed to the Urine Surveillance Log are identical. ECF No. 7, Ex. 1 at Attachment J.

On June 13, 2013, Melendez was notified of his various rights in connection with the Unit Discipline Committee Hearing ("UDC"), and signed and dated the notification form. ECF No. 7, Ex. 1 at Attachment D.[6] The rights include, *inter alia,* the right to call witnesses, provided safety would not be jeopardized; the right to present documentary evidence; the right to remain silent as well as the inference that may be drawn; and the right to contest a decision, in accordance with "Administrative Remedy" procedures. *Id.*, Ex. 1 at Attachment D & Attachment H. Further, he was advised that he had the right to have a written copy of the charges provided to him at least 24 hours prior to appearing before the UDC. *Id.*, Ex. 1 at Attachment E. Melendez declined to have a staff representative appear on his behalf. *Id.*, Ex. 1, Attachment F & Attachment H, ¶ 23. At his UDC hearing, Melendez denied the charge, questioned the specimen's chain-of-custody, and requested a re-test. *Id.*, Ex. 1 at ¶ 9 & Attachment H at ¶ 23.

That same date, June 13, 2013, DHO Thomas McGee reviewed and certified the UDC findings. *Id.*, Ex. 1 at Attachment I. He found that there was sufficient evidence to conclude that Melendez had committed the prohibited offense based upon the chain-of-custody form, the positive test results, and the lack of contradictory witness testimony from anyone besides Melendez. *Id.* Melendez was sanctioned with a 365-day removal from the RCC program, which was suspended. Melendez was, however, additionally sanctioned with the disallowance of forty (40) days good time credit, a forfeiture of forty (40) days non-vested good conduct time, sixty (60) days disciplinary segregation, a 365-day loss of commissary, telephone, and visiting privileges, and a 180-day loss of visitors. Due to these sanctions, Melendez was taken back into custody on June 13, 2013, and assigned to the Kent County Detention Center. *Id.*

Melendez was released from custody on August 9, 2013. *Id.*, Ex. 2 at Williams Decl. &

---

[6] A UDC consists of two or more staff members with authority to hold an initial hearing after an investigation of alleged inmate misconduct. 28 C.F.R. § 541.7(b). It is also referred to as the Center Discipline Committee Hearing or "CDC." *See, e.g.,* Declaration of Thomas

Attachment B. On August 19, 2013, Melendez filed a change of address form indicating that he was released from confinement to a Baltimore, Maryland address. ECF No. 6.

Respondents provide an uncontroverted record showing that, during his most recent confinement, Melendez never filed an administrative remedy appeal. *Id*., Ex. 2, Declaration of Howard Williams, Legal Assistant at the BOP, Mid-Atlantic Regional Office, & Attachment A.

With the unopposed facts and standards in mind, the court shall address Melendez's claims.

### III. Discussion

#### A.

As noted, Melendez has been released from BOP confinement. Because Melendez has received the requested relief, his habeas petition has been rendered moot. Put another way, Melendez's release from BOP custody moots this action, as there is no habeas relief for the court to grant. *See Belasco v. Warden*, 156 Fed. Appx. 671, **1 (5th Cir. 2005). "A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." *Aragon v. Shanks*, 144 F.3d 690, 691 (10th Cir. 1998); *see Spencer v. Kemna*, 523 U.S. 1 (1998) (habeas petitioners who are no longer in custody must demonstrate a concrete and continuing injury that is a collateral consequence of detention).

"This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990). The parties must continue to have a "'personal stake in the outcome' of the lawsuit." *Id.* at 478 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983)). "This means that, throughout the litigation, the complainant 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " *Spencer*, 523 U.S. at 7 (quoting *Lewis,* 494 U.S. at 477).

---

McGee, ECF 7-2.

Even if this case were not moot, summary judgment in favor of the defense is warranted on other grounds, as discussed below.

**B.**

It is well established that a federal prisoner challenging the execution of his sentence must first exhaust his administrative remedies prior to seeking review in federal court under § 2241. *See McClung v. Shearin*, 90 Fed. Appx 444, 445 (4th Cir. 2004); 28 C.F.R. § 541.8(I); 28 C.F.R. § 542.10 *et. seq.* With respect to a DHO decision, the inmate must first file an appeal with the BOP Regional Director. 28 C.F.R. § 542.14. If that avenue is unsuccessful, the inmate must appeal to the BOP General Counsel's Office. 28 C.F.R. § 542.15. Once these administrative remedies are exhausted, the inmate may seek judicial relief under 28 U.S.C. § 2241.

Unlike the exhaustion requirement for 42 U.S.C. § 1983 and 28 U.S.C. § 1331 *Bivens*[7] actions, the exhaustion requirement for § 2241 petitions is judicially imposed. *See Moscato v. Federal Bureau of Prisons,* 98 F.3d 757, 760 (3rd Cir. 1996). Because the exhaustion requirement for a § 2241 petition is judicially imposed, the court has discretion to waive that requirement in certain circumstances. *See Laing v. Ashcroft,* 370 F.3d 994, 998 (9th Cir. 2004). Prudential exhaustion may be excused when irreparable injury may occur without immediate judicial relief, when an administrative appeal would be futile, or in certain instances where a substantial constitutional question has been raised. *Laing,* 370 F.3d at 1000–01 (quoting *Beharry v. Ashcroft,* 329 F.3d 51, 62 (2nd Cir. 2003)).

Respondents have unequivocally demonstrated that Melendez did not pursue an administrative remedy regarding his adjustment citation or the disciplinary review process while confined. Melendez does not refute this claim. Rather, he appears to state that exhaustion should be

---

[7] *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388. (1971).

excused as futile because the federal grievance process was not available to him when he was transferred to a local county facility. *See* ECF No. 1 at p. 6.

## C.

Assuming, *arguendo*, that exhaustion requirements may be waived, the court concludes that there is no basis to do so; no due process violation has been demonstrated.

The BOP has the authority to provide for the protection, instruction, and discipline of all persons convicted of offenses against the United States. *See* 18 U.S.C. § 4042(a)(3). Authority for administering the federal prison system was delegated by Congress to the Federal Bureau of Prisons. *See* 18 U.S.C. § 4042; 28 C.F.R. § 500 *et seq*. This authority includes the duty to "provide for the protection, instruction and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3). Pursuant to this authority, the BOP has promulgated rules for inmate discipline, *see* 28 C.F.R. §§ 541.1-541.8, and provides for exhaustive process.

If staff believe that an inmate has violated a BOP regulation, an incident report is prepared and the inmate is provided a written copy of the charges, ordinarily within 24 hours of the time staff become aware of the inmate's involvement in the incident. *See* 28 C.F.R. §§ 541.5(a) & (b)(2). An investigating officer reads the charges to the inmate, advises him of his rights, including the right to remain silent, and informs the inmate that his silence may be used to draw an adverse inference against him, although silence alone is not sufficient to establish that the inmate committed a prohibited act. 28 C.F.R. § 541.5(b)(1). The investigator then requests a statement from the inmate.

After completion of the investigation, materials are forwarded to the UDC for an initial hearing, which is ordinarily conducted within 5 working days. *See* 28 C.F.R. § 541.7. The inmate is entitled to attend the hearing, except during deliberation of the decision-makers or when institutional security would be jeopardized by the inmate's presence, and he may make a statement and present documentary evidence on his own behalf.

After considering all of the evidence presented at the hearing, the UDC makes a decision based on at least some facts and, if there is conflicting evidence, based on the greater weight of the evidence. *See* 28 C.F.R. § 541.7. If the UDC finds the inmate committed the prohibited act or a similar act if reflected in the incident report, and determines that the violation is serious and warrants consideration for non-minor sanctions, the UDC refers the charges to the DHO for further proceedings, without indication of findings as to the commission of the alleged violation, and with a brief statement of the reasons for the referral. *See* 28 C.F.R. §§ 541.7 & 541.8(a)(4). If referred to the DHO, the UDC also forwards copies of all relevant documents to the DHO, along with any recommendation for appropriate disposition if the DHO finds the inmate committed the act(s) charged. S*ee* 28 C.F.R. § 541.8. The UDC advises the inmate of the rights afforded to him at the hearing before the DHO and asks the inmate to indicate a choice of staff representative, if any, and the names of witnesses he wishes to call to testify at the hearing as well as the nature of the proposed testimony. *See* 28 C.F.R. §§ 541(g), 54.1. These witnesses are listed on the disciplinary hearing notice.

When appearing before the DHO, the inmate is entitled to: (1) make a statement and to present documentary evidence; (2) submit the names of requested witnesses and have them called to testify; and (3) present documents on his own behalf. *See* 28 C.F.R. § 541.8(e). Witness testimony and documentary evidence may be presented, provided the calling of witnesses and disclosure of documents do not jeopardize prison or inmate security. *Id*.

The DHO considers all evidence presented at the hearing and bases his or her decision on at least some facts, and if there is conflicting evidence, on the greater weight of the evidence. *See* 28 C.F.R. § 541.8(f). The DHO makes a determination as to whether the inmate committed the charged act(s) or similar act(s) if reflected in the incident report, and prepares a record of the proceedings, which need not be verbatim. *See* 28 C.F.R. § 541.8(h). The record details the inmate's advisement

of his rights, the findings and decision of the DHO, the specific evidence relied on by the DHO, and includes a brief statement of the reasons for the sanctions. *See* 28 C.F.R. § 541.8(h)(1)-(5). A written copy of the decision and disposition is provided to the inmate. *Id*.

Although an inmate retains rights under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). However, in prison disciplinary proceedings, where an inmate faces the possible loss of good conduct time, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U. S. at 564-571. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel, however. *See Baxter v. Palmigiano*, 425 U. S. 308, 322-23 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n.5.

The disciplinary process associated with Melendez's institutional charge readily satisfied the applicable due process procedural requirements. Melendez received written notice of the charges, was advised of his rights, was permitted to have representation, and received formal notice of the hearing. The documentation illustrates that Melendez was given the opportunity to call witnesses, but did no not do so, and was provided review by the UDC and the DHO. In addition, while Melendez claims that his urine sample should have been re-tested, there was no obligation to do so.

Further, a written statement was issued as to the evidence relied on to find that petitioner violated Code 112, and the statement offered specific reasons why the sanction was imposed.

Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary officer's factual findings, a federal court will not review their accuracy.[8]

The proceedings before this court are not a retrial of the incident. Here, the DHO's decision was based upon more than "some evidence," and was more than sufficient to sustain the Code 112 charge. The evidence included the incident report, the resulting investigation, and Melendez's notice of the prohibited acts under BOP and VOA policies. These constitute "some" facts upon which the DHO was entitled to rely in finding petitioner guilty of the Code 112 violation.

### IV. Conclusion

For the reasons articulated herein, the court shall grant summary judgment in favor of respondents. An Order follows.

Date: February 4, 2014         /s/
                               Ellen Lipton Hollander
                               United States District Judge

---

[8] The role of the district court is not to afford a *de novo* review of the DHO's factual findings. The district court should simply determine whether the decision was supported by some facts. The sole and only issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by prison officials. Otherwise, the federal court would assume the task of retrying all prison disciplinary disputes.